### In re DUNCAN.

#### (Circuit Court, S. D. New York. June 27, 1893.)

CUSTOMS DUTIES—TARIFF ACT OF OCTOBER 1, 1890—SUGAR WAFERS—CLASSIFI-
CATION.

Sugar wafers which are made by biscuit makers of flour, sugar, milk, and eggs, flavored with vanilla, and are used exclusively as articles of table food, are not dutiable at the rate of 20 per centum ad valorem as nonenumerated manufactured articles, under the provision for such articles contained in section 4 of the tariff act of October 1, 1890, (26 Stat. 613,) but are free of duty, as "wafers unmedicated," under the provision for such wafers contained in paragraph 750 (free list) of the same tariff act, (26 Stat. 610.)

At Law. Appeal by importer from a decision of the board of United States general appraisers.

One John P. Duncan, doing business under the name of John Duncan's Sons, imported on April 16, 1891, by the Majestic, from a foreign country into the United States, at the port of New York, certain so-called "sugar wafers." These wafers were classified for duty as nonenumerated manu-factured articles under the provision for such articles contained in section 4 of the tariff act of October 1, 1890, (26 Stat. 613,) and duty at the rate of 20 per cent. ad valorem, the rate specified for such articles by that section, was exacted thereon by the collector of customs of that port. Against this classification and this exaction the importer duly protested, claiming that these wafers were free of duty, as "wafers unmedicated," under the provision for such wafers contained in paragraph 750 (free list) of the same tariff act, (26 Stat. 610.) Upon the receipt of this protest the collector, pursuant to section 14 of the customs administrative act of June 10, 1890, (26 Stat. 137,) transmitted the invoice of these articles, and all the papers and exhibits connected therewith, to a board of three United States general appraisers on duty at this port.

The board of general appraisers, having taken evidence, overruled the pro-test of the importer, and affirmed the classification and the exaction made by the collector. The importer being dissatisfied with the decision of the board of general appraisers, applied, pursuant to section 15 of the customs ad-ministrative act, to the United States circuit court for the southern district of New York for a review of the questions of law and fact involved therein. In compliance with an order granted upon such application the board of general appraisers made its return to the circuit court, and thereafter further evidence was taken in that court.

From the evidence accompanying this return, and from the further evidence taken in the circuit court, it appeared that these articles in suit were made of flour, sugar, milk, and eggs, and were flavored with vanilla extract. That they were used exclusively as articles of table food, being of a delicate and luxurious kind; were made only by biscuit makers, and were classed in the line of biscuits. That they were known in the trade as "sugar wafers," or, more specifically, as "vanilla sugar wafers," the word "vanilla" indicating that they were flavored with vanilla extract; and that, while they contained no element of medicinal material, being in fact unmedicated, they were never known in trade and commerce as "wafers unmedicated" or "unmedi-cated wafers." That there were articles known among druggists and phy-sicians as "medicinal wafers," which consisted of a thin wafer of wheat flour, were brittle when dry, but became flexible and plastic when dipped in water, and which were used to envelop nauseous medicines when ad-ministered to persons. That there were articles made from the same ma-

terials, and similar in shape, known as wafers, which were used for sacramental purposes. That there were other articles made from the same materials, and in thin sheets, known to confectioners and bakers as wafers, and used by confectioners to prevent sticky candies from adhering to each other, or to anything with which they might come in contract, and by bakers as a foundation on which cakes and macaroons were placed and baked; and that there were still other articles known as wafers, and used in sealing letters and other documents. That these medicinal wafers, these sacramental wafers, these confectioners' and bakers' wafers, and these sealing wafers were all in fact unmedicated, though neither variety of these wafers was known to trade and commerce as "wafers unmedicated" or "unmedicated wafers." That the term "wafers unmedicated" or "unmedicated wafers" was not a trade or commercial term; and that there were articles containing medicines or supposed medicines, and used for medicinal purposes, that were known to druggists as "medicated wafers," such as cough wafers, bronchial wafers, worm wafers, and other wafers.

Comstock & Brown, (Albert Comstock, of counsel,) for importer.

Edward Mitchell, U. S. Atty., and Thomas Greenwood, Asst. U. S. Atty., for collector.

LACOMBE, Circuit Judge, (orally.) These articles are in fact unmedicated. That is not disputed. They are know in commerce as "wafers." That also, I understand, is not disputed. Not only are they known as "wafers," but they are wafers, within the dictionary meaning of the term. That has no new meaning either. It is a meaning of the word evidently centuries old. They are therefore within the express phraseology of paragraph 750, and, though it may seem strange that congress should make this particular food product free, it is not for the court to substitute its own guesses as to what the intention of congress may be, when the language which they have used is so plain upon its face as this phrase is. I shall therefore reverse the decision of the board of appraisers, and direct the classification under paragraph 750, free.